1

**THE TRIAL LAW FIRM, LLC**
Mart Harris, Esquire
Pa. Id. No. 319504
412.588.0030 | MH@TLawF.com

2

3

The Pittsburgher
428 Forbes Avenue, Suite 1700
Pittsburgh Pennsylvania 15219

4

5

### IN THE UNITED STATES DISTRICT COURT

6

### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

7

### PITTSBURGH DIVISION

8

| | |
|---|---|
| **MATTHEW GRINAGE aka KIMBERLY GRINAGE,** | Case No. 2:21-cv-0820 |
| Plaintiff, | |
| vs. | **COMPLAINT IN CIVIL ACTION** |
| **EXTENDED STAY AMERICA, INC.; MATTHEW FIGURSKI in his individual capacity** | **Fed.R.Civ.P. 38(b)(1) Notice of Demand for Trial by Jury** |
| Defendants. | |

9

10

11

12

13

14

15

### <u>COMPLAINT</u>

16

NOW COMES the Plaintiff, Matthew Grinage, aka Kimberly Grinage ("Grinage") by

17

and through The Trial Law Firm, LLC in compliance with Fed.R.Civ.P. 9(c) to file the within

18

Complaint in Civil Action, and in support thereof avers that:

19

20

21

22

23

24

25

**Parties, Jurisdiction, and Venue**

1.      Grinage is an adult transgender individual who resides in Allegheny County Pennsylvania.

2.      The First Defendant is Extended Stay America, Inc. ("Extended Stay"). Extended Stay is a North Carolina for-profit corporation that advertises and does business in Allegheny County Pennsylvania.

3.      The Second Defendant is Matthew Figurski ("Figurski"). Figurski is an adult individual who calls himself a "Christian" and conforms to traditional gender roles and expectations, and expects his subordinates to conform to his interpretations of Christianity and gender roles. Figurski is a management level employee of Extended Stay, and at all times relevant to this lawsuit, was Grinage's supervisor.

4.      Grinage brings this lawsuit to redress violations of Title VII. Thereby this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

5.      The events and omissions which give rise to the claims asserted in this lawsuit occurred in the geographical territory of this court, in or around Coraopolis Pennsylvania. Therefore, pursuant to 28 U.S.C. § 1391(b), this district court is the proper venue for this lawsuit.

**Facts of the Case**

6.      All other paragraphs of this lawsuit are incorporated.

7.      Prior to the start of Grinage's employment with Extended Stay, Grinage applied for the position, and spoke with Matthew Figurski ("Figurski").

8.      Figurski inquired, in relevant part, whether Grinage was Christian.

9.      Grinage responded, "yes."

10.     Due in part to Figurski's question in the interview, Grinage did not reveal, and instead, kept secret, Grinage's transgender status.

11.     During the course of employment, Grinage's co-workers encouraged Grinage to "be yourself."

12.     In light of said encouragement, Grinage came to work dressed in attire that is traditionally associated with women.

13.     Some of Grinage's co-workers mocked and harassed Grinage for "dressing like a girl."

14.     On or about April 10, 2020, Grinage reported the harassment to management, specifically, Figurski. See **Exhibit 1**, *April 10, 2020 Letter* (partially reproduced below):

Mathew M Grinage is Transgender
male To Female

Dr STacy Lane
Central OuTreach Wellness Center
127 Anderson ST STE
101, PiTTsburgh, PA 15212

His female name is Kimberly Grinage

Sex discriminaTion ViolaTes
TiTle VII of The Civil RighTs AcT of 1964
when it occurs in The workplaces
EEOC Guidelines

I Mathew M Grinage should noT
have To worry abouT who I am
I've wenT Through cancer
and Because of this Covid-19 virus
I have To Keep my immune sysTem up
To stay healthy

Math M Grinay   412-812-8481

15.     Figurski replied, "Matt, I can't help you. I don't want a transgender person here. If you are going to do that, I have to get rid of you."

16.     Grinage thereafter, reported Figurski to Extended Stay's "hotline" number.

17.     Shortly after Grinage contacted the hotline, Figurski physically cornered Grinage and demanded that the report be retracted if Grinage wanted to remain employed.

18.     Following Grinage's hotline report, Figurski harassed Grinage on the basis of sex 2-3 times per week, by stating such things as:

   a.   "This is an American hotel" therefore he "didn't want any of that trans crap here."

   b.   "Stop acting like a girl."

c.   "You look like a fag."

d.   "You look stupid."

e.   "Dress like a guy."

19.   Following Grinage's hotline report, Figurski would demand that Grinage "rate" the physical attractiveness of female customers.

20.   Grinage was visibly uncomfortable when Figurski made these demands, and thereafter, Figurski would state, _e.g._, "you're a guy, you are supposed to know when girls are pretty."

21.   On or about September 11, 2020, Figurski told Grinage;

a.   that Grinage should be fired on the basis of sexual orientation.

b.   that "I only hired you because you said you are Christian."

c.   He expected to "look at girls together" with Grinage.

d.   If Figurski was aware of Grinage's sexual orientation prior to hiring, he would not have hired Grinage.

e.   "You are a guy not a girl. You need to quit with that. If you continue to act that way I am going to fire you."

22.   Grinage stated in response that Figurski was not permitted to terminate Grinage's employment on the basis of sexual orientation.

23.   Figurski responded that he would "find a way."

24.   On or about September 15, 2020 Figurski terminated Grinage's employment.

25.   Upon information and belief, the reason for the termination was that Grinage did not call the police as required to respond to an incident, that people (presumably customers) complained about Grinage's clothes, and that people complained about Grinage's mask.

26.     Prior to September 15, 2020, Figurski instructed Grinage to not call the police and/or fire department. On one such occasion, when something was actively on fire, instead of calling firefighters, according to Figurski, Grinage should have put out the fire instead of "acting like a girl."

27.     Prior to September 15, 2020, Grinage survived cancer.

28.     Due to his status as a cancer survivor, Grinage wore a specialized mask rather than a paper or cloth mask most people used due to the COVID-19 pandemic.

29.     Extended Stay was specifically aware of Grinage's cancer survivor status and its impact on Grinage's choice of mask.

30.     These causes of action follow:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COUNT I**

**42 U.S.C. § 2000e-2(a)(1)- Sex Discrimination**

**Hostile Work Environment**

**Grinage v. Extended Stay**

31.     All other paragraphs of this lawsuit are incorporated.

32.     Grinage was subject to harassment on the basis of sex as discussed in ¶¶ 14, 16, and 19-22.

33.     Grinage did not welcome the harassment as demonstrated in ¶¶ 15, 17, 21, and 23.

34.     The harassment was motivated by Grinage's transgender status as demonstrated in ¶¶ 14, 16, and 19-22.

35.     Any reasonable person in Grinage's position would find Grinage's work environment to be hostile and abusive, as the harassment was both severe and pervasive. Specifically, ¶ 19(c) demonstrate severe harassment.

36.     Grinage believed the work environment was hostile as demonstrated in ¶ 17.

37.     Management was aware of Grinage's environment as demonstrated in ¶¶ 15-18.

38.     Management participated in Grinage's environment as demonstrated in ¶¶16, 18-24, and 27.

39.     As a direct and proximate result of Grinage's environment, Grinage was injured and entitled to damages.

## COUNT II

### 42 U.S.C. § 2000e-3(a)- Retaliation

### False Imprisonment, Assault, Hostile Work Environment and Wrongful Termination

### Grinage v. Extended Stay

40.     All other paragraphs of this lawsuit are incorporated.

41.     Grinage engaged in protected activity as demonstrated in ¶¶ 15, 17, and 23.

42.     Following Grinage's protected activity, Grinage was immediately subjected to materially adverse actions as demonstrated in ¶¶ 16, 18-22, and 25.

43.     The materially adverse actions can be inferred as retaliatory on the non-exclusive basis of unduly suggestive temporal proximity, as well as direct evidence demonstrated in ¶¶ 18, 22(a), (d-e), 24, and 27.

44.     As a direct and proximate result of the materially adverse actions, Grinage was injured and entitled to damages.

**COUNT III**

**42 U.S.C. § 2000e-2(m)- Sex Discrimination**

**Wrongful Termination**

**Grinage v. Extended Stay**

45.    All other paragraphs of this lawsuit are incorporated.

46.    Defendant terminated Grinage's employment as discussed in ¶ 25.

47.    Grinage's transgender status was a motivating factor in Defendant's decision to terminate Grinage's employment as demonstrated in ¶¶ 8, 16, 18, 19(a), 22(a), (d-e), and 23-24.

48.    As a direct and proximate result of Defendant's action to terminate Grinage's employment, Grinage was injured and is entitled to damages.

## COUNT IV

### 42 U.S.C. § 2000e-2(a)- Sex Discrimination

### Wrongful Termination

### Grinage v. Extended Stay

49.     All other paragraphs of this lawsuit are incorporated.

50.     Defendant terminated Grinage's employment as discussed in ¶ 25.

51.     Grinage's transgender status was a determinative factor in Defendant's decision to terminate Grinage's employment as demonstrated in ¶¶ 8, 16, 18, 19(a), 22(a), (d-e), and 23-24.

52.     Defendant lied about its reason for terminating Grinage's employment, as demonstrated in ¶ 27.

53.     As a direct and proximate result of Defendant's action to terminate Grinage's employment, Grinage was injured and is entitled to damages.

**COUNT V**

**42 U.S.C. § 2000e-2(a)- Religious Discrimination**

**Wrongful Termination**

**Grinage v. Extended Stay**

54.     All other paragraphs of this lawsuit are incorporated.

55.     Defendant terminated Grinage's employment as discussed in ¶ 25.

56.     Grinage's failure to conform to Figurski's interpretation of Christianity was a determinative factor in Defendant's decision to terminate Grinage's employment as demonstrated in ¶¶ 8, and 22(b).

57.     Defendant lied about its reason for terminating Grinage's employment, as demonstrated in ¶ 27.

58.     As a direct and proximate result of Defendant's action to terminate Grinage's employment, Grinage was injured and is entitled to damages.

**COUNT VI**

**42 U.S.C. § 12112(a)- Disability Discrimination**

**Failure to Accommodate and Wrongful Termination**

**Grinage v. Extended Stay**

59.    All other paragraphs of this lawsuit are incorporated.

60.    Grinage is a qualified individual under the ADA due to his immunocompromised status as a result of his cancer.

61.    Grinage was able to perform the essential functions of his duties for Extended Stay with or without accommodation, specifically, his specialized facemask.

62.    Grinage was terminated as discussed in ¶ 25.

63.    Grinage's termination can be inferred as discriminatory on the non-exclusive basis that Figurski stated that the termination was due to complaints about Grinage's mask.

64.    Grinage was not given the opportunity to wear a different mask.

65.    Extended Stay was on specific notice of Grinage's cancer survivor status and the reason for his mask, yet still allowed him to be terminated because of his mask.

66.    As a direct and proximate result of Defendant's action to terminate Grinage's employment, Grinage was injured and is entitled to damages.

**COUNT VII**

**43 P.S. § 955(a)- Sex Discrimination**

**Hostile Work Environment**

**Grinage v. Extended Stay**

67.     All other paragraphs of this lawsuit are incorporated.

68.     Grinage was subject to harassment on the basis of sex as discussed in ¶¶ 14, 16, and 19-22.

69.     Grinage did not welcome the harassment as demonstrated in ¶¶ 15, 17, 21, and 23.

70.     The harassment was motivated by Grinage's transgender status as demonstrated in ¶¶ 14, 16, and 19-22.

71.     Any reasonable person in Grinage's position would find Grinage's work environment to be hostile and abusive, as the harassment was both severe and pervasive. Specifically, ¶ 19(c) demonstrate severe harassment.

72.     Grinage believed the work environment was hostile as demonstrated in ¶ 17.

73.     Management was aware of Grinage's environment as demonstrated in ¶¶ 15-18.

74.     Management participated in Grinage's environment as demonstrated in ¶¶16, 18-24, and 27.

75.     As a direct and proximate result of Grinage's environment, Grinage was injured and entitled to damages.

**COUNT VIII**

**43 P.S. § 955(d)- Retaliation**

**False Imprisonment, Assault, Hostile Work Environment and Wrongful Termination**

**Grinage v. Extended Stay**

76.    All other paragraphs of this lawsuit are incorporated.

77.    Grinage engaged in protected activity as demonstrated in ¶¶ 15, 17, and 23.

78.    Following Grinage's protected activity, Grinage was immediately subjected to materially adverse actions as demonstrated in ¶¶ 16, 18-22, and 25.

79.    The materially adverse actions can be inferred as retaliatory on the non-exclusive basis of unduly suggestive temporal proximity, as well as direct evidence demonstrated in ¶¶ 18, 22(a), (d-e), 24, and 27.

80.    As a direct and proximate result of the materially adverse actions, Grinage was injured and entitled to damages.

**COUNT IX**

**43 P.S. § 955(a)- Sex Discrimination**

**Wrongful Termination**

**Grinage v. Extended Stay**

81.     All other paragraphs of this lawsuit are incorporated.

82.     Defendant terminated Grinage's employment as discussed in ¶ 25.

83.     Grinage's transgender status was a motivating factor in Defendant's decision to terminate Grinage's employment as demonstrated in ¶¶ 8, 16, 18, 19(a), 22(a), (d-e), and 23-24.

84.     Grinage's transgender status was a determinative factor in Defendant's decision to terminate Grinage's employment as demonstrated in ¶¶ 8, 16, 18, 19(a), 22(a), (d-e), and 23-24.

85.     Defendant lied about its reason for terminating Grinage's employment, as demonstrated in ¶ 27.

86.     As a direct and proximate result of Defendant's action to terminate Grinage's employment, Grinage was injured and is entitled to damages.

**COUNT X**

**43 P.S. § 955(a)- Religious Discrimination**

**Wrongful Termination**

**Grinage v. Extended Stay**

87.   All other paragraphs of this lawsuit are incorporated.

88.   Defendant terminated Grinage's employment as discussed in ¶ 25.

89.   Grinage's failure to conform to Figurski's interpretation of Christianity was a determinative factor in Defendant's decision to terminate Grinage's employment as demonstrated in ¶¶ 8, and 22(b).

90.   Defendant lied about its reason for terminating Grinage's employment, as demonstrated in ¶ 27.

91.   As a direct and proximate result of Defendant's action to terminate Grinage's employment, Grinage was injured and is entitled to damages.

**COUNT XI**

**43 P.S. § 955(a)- Disability Discrimination**

**Wrongful Termination and Failure to Accommodate**

**Grinage v. Extended Stay**

92.     All other paragraphs of this lawsuit are incorporated.

93.     Grinage is a qualified individual under the PHRA due to his immunocompromised status as a result of his cancer.

94.     Grinage was able to perform the essential functions of his duties for Extended Stay with or without accommodation, specifically, his specialized facemask.

95.     Grinage was terminated as discussed in ¶ 25.

96.     Grinage's termination can be inferred as discriminatory on the non-exclusive basis that Figurski stated that the termination was due to complaints about Grinage's mask.

97.     Grinage was not given the opportunity to wear a different mask.

98.     Extended Stay was on specific notice of Grinage's cancer survivor status and the reason for his mask, yet still allowed him to be terminated because of his mask.

99.     As a direct and proximate result of Defendant's action to terminate Grinage's employment, Grinage was injured and is entitled to damages.

**COUNT XII**

**Common law of Pennsylvania- False Imprisonment**

**Grinage v. All Defendants**

100.    All other paragraphs of this lawsuit are incorporated.

101.    Figurski detained Grinage without Grinage's consent as demonstrated in ¶ 18.

102.    Figurski had no lawful basis or justification to detain Grinage, and only did so in order to stymie an internal investigation against him, using his authority to threaten Grinage's employment.

103.    Extended Stay is vicariously liable for Figurski's conduct described in this count.

104.    As a direct and proximate result of Figurski's actions as described in this count, Grinage was injured and is entitled to damages.

**COUNT XIII**

**Common law of Pennsylvania- Assault**

**Grinage v. All Defendants**

105.    All other paragraphs of this lawsuit are incorporated.

106.    When Figurski took the actions described in ¶ 18, due to Figurski's violent demeanor and physical proximity to Grinage at that moment, Grinage was in imminent fear of being struck by Figurski.

107.    Figurski had no lawful basis or justification to assault Grinage, and only did so in order to stymie an internal investigation against him, using his authority to threaten Grinage's employment.

108.    Extended Stay is vicariously liable for Figurski's conduct described in this count.

109.    As a direct and proximate result of Figurski's actions as described in this count, Grinage was injured and is entitled to damages.

**COUNT XIV**

**Common law of Pennsylvania- Negligent Supervision**

**Grinage v. Extended Stay**

110.    All other paragraphs of this lawsuit are incorporated.

111.    Extended Stay has a duty and responsibility of care to supervise its employees in a manner that discourages its employees from acting on discriminatory propensities.

112.    Prior to Grinage's complaint to HR, Keith LNU a corporate officer of Extended Stay, was temporarily living at the location where Grinage was employed.

113.    Keith was at that time, in a homosexual relationship with Brian LNU.

114.    During the time that Keith and Brian were living at the location where Grinage was employed, Brian died in the hotel.

115.    Figurski was not on duty but was asked to immediately come to the hotel as its person in charge, given that there was a death at the hotel.

116.    Figurski ignored those requests.

117.    A couple days after Brian's death, Grinage discussed the events and specifically Figurski's response with co-worker, Emily LNU.

118.    Emily was unsurprised and stated that Figurski did not respect Keith because of Keith's sexual orientation; that he otherwise feigned respect because Keith was his supervisor.

119.    Grinage did not believe Emily.

120.    Grinage spoke with Figurski about his feelings towards Keith, and Figurski confirmed that he did not really respect Keith due to Keith's sexual orientation.

121.    Upon information and belief, including but not exclusively limited to the fact that Emily appeared unsurprised about Figurski's reaction to Brian's death, and her accuracy about Figuski's feelings towards Keith, Extended Stay was constructively and/or actually aware of Figurski's discriminatory propensities against those that Figurski believed did not

1    conform to gender roles as Figurski understood them, as they were open, obvious, and

2    pervasive enough for employees to be aware of them.

3         122.    Extended Stay breached its duty and responsibility of care when, despite being

4    on notice of Figurski's discriminatory propensities, Extended Stay failed to supervise Figurski,

5    and instead, left him in charge of one of Extended Stay's locations.

6         123.    As a direct and proximate result of Extended Stay's retention of Figurski,

7    Figurski was able to discriminate against, detain, and assault Grinage as described in this

8    lawsuit.

9         124.    As a direct and proximate result of Extended Stay's breach as described in this

10   count, Grinage was injured and entitled to damages.

**COUNT XV**

**Common law of Pennsylvania- Negligent Training**

**Grinage v. Extended Stay**

125.    All other paragraphs of this lawsuit are incorporated.

126.    Extended Stay has a duty and responsibility of care to train its employees in a against acting on discriminatory propensities.

127.    Upon information and belief, Extended Stay provided initial anti-discrimination training to Figurski.

128.    Upon information and belief, following and despite the initial anti-discrimination training it provided to Figurski, Extended Stay was on constructive and/or actual knowledge that Figurski either ignored or forgot his anti-discrimination training when it became aware that Figurski did not believe that persons who did not conform to his interpretation of gender roles did not deserve to live, as discussed in ¶ 106.

129.    Extended Stay breached its duty and responsibility of care when, despite being on notice of Figurski's continued discriminatory propensities and that they impacted his employment duties as discussed in ¶¶ 100-101, Extended Stay failed to supervise Figurski, and instead, left him in charge of one of Extended Stay's locations.

130.    As a direct and proximate result of Extended Stay's failure to re-train Figurski, Figurski was able to discriminate against, detain, and assault Grinage as described in this lawsuit.

131.    As a direct and proximate result of Extended Stay's breach as described in this count, Grinage was injured and entitled to damages.

1    WHEREFORE, Plaintiff, Matthew Grinage, aka Kimberly Grinage, respectfully

2    requests Judgment against Extended Stay America, Inc. and Matthew Figurski, jointly and

3    severally where appropriate, to include both economic and non-economic compensatory

4    damages to include emotional damages, humiliation, embarrassment, pain and suffering, and

5    loss of enjoyment of life, as well as punitive damages, attorney's fees, and cost of suit.

6    Respectfully submitted on May 31, 2021

7                                              **THE TRIAL LAW FIRM, LLC**

8

9    **By:**    _____

10                  Mart Harris, Esquire
                   *Trial Lawyer for Grinage*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25